FERRO CORPORATION, Appellant,

v.

BLAW KNOX FOOD & CHEMICAL EQUIPMENT COMPANY et al., Appellees.

[Cite as *Ferro Corp. v. Blaw Knox Food & Chem.*
*Equip. Co.* (1997), 121 Ohio St.3d 434.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70804 and 70936.

Decided July 3, 1997.

436

*Alan N. Hirth, Rene´ D. Smith* and *Thomas M. Wilson,* for appellant.

*Meyer, Unkovic & Scott, L.L.P.,* and *P. Christian Hague,* for appellee Blaw Knox Food & Chemical Equipment Company.

*Stephen M. Bales, Anthony J. Damelio* and *Michael S. Owendoff*, for appellee American Tank & Fabricating Company.

---

JOSEPH E. MAHONEY, Judge.

The following appeal arises from a decision of the Cuyahoga County Court of Common Pleas that granted partial summary judgment against plaintiff-appellant Ferro Corporation ("Ferro") in favor of defendant-appellee Blaw Knox Food & Chemical Equipment Company ("Blaw Knox") and granted summary judgment against Ferro in favor of defendant-appellee American Tank & Fabricating Company ("ATF"). For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

The record reveals that in 1989, Ferro sought proposals from design and manufacturing companies for the design, fabrication and manufacture of a high pressure three-thousand-gallon gross capacity 316-L stainless steel reactor with design pressure of three thousand psig at 4000° F. This reactor was intended for use both in the production of TROUNCE for Chevron pursuant to a toll processing agreement and for other products. During the course of negotiations, Ferro received written proposals from both Nooter Corporation and Blaw Knox. The negotiations included such issues as the expertise of the manufacturer, the timing of both the fabrication and the delivery, and the cost of the reactor. Blaw Knox submitted a proposal to Ferro on November 3, 1989. This proposal was rejected by Ferro on November 17. On November 20, Blaw Knox submitted its modified proposal to Ferro. On December 27, by letter, Ferro informed Blaw Knox of its acceptance of the quote for the reactor. On January 2, 1990, Ferro issued its purchase order for the reactor. Blaw Knox accepted the Ferro purchase order on January 4, 1990, and designated a shipping date of July 23, 1990. Blaw Knox subcontracted eighty-five to ninety percent of the manufacturing, fabrication and assembly of the reactor to ATF. The reactor was shipped to Ferro in January, 1991.

In December, 1991, the initial batches of TROUNCE failed to meet Chevron's specifications. Upon investigation of the process deficiencies, the reactor was unsealed in July 1992. It was then discovered that the reactor liner had failed. Ferro was forced to repair the damage to the reactor and to replace the stainless steel liner. Early in 1993, Chevron canceled the TROUNCE project and bought out the Ferro contract for $2.1 million.

On December 29, 1992, Ferro filed a nine-count complaint against Blaw Knox and ATF, alleging both tort and contract claims. Ferro's claims against Blaw Knox were for fraud, breach of contract, negligent misrepresentation, negligence, negligent supervision, breach of fiduciary duty and breach of warranty of

purpose. Ferro's claims against ATF were for negligence, strict liability and breach of warranty of purpose. On September 26, 1995, Blaw Knox moved for summary judgment on the bases that the contract claims were barred by the one-year warranty provision and that the tort claims were precluded by the holding of *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 537 N.E.2d 624. ATF moved for summary judgment on the basis that Ferro is precluded from recovering economic damage without "death, physical injury to persons, serious emotional distress, or physical damage to property other than the product in question." After briefing by the parties, the trial court, on June 6, 1996, granted the motion for summary judgment of ATF and granted the motion of Blaw Knox, in part stating:

"Motion for summary judgment filed by Defendant American Tank & Fabricating is hereby GRANTED. The Court relies on *Queen City Terminals v. Gen. Am. Trans. Corp.* (1995) [73 Ohio St.3d 609, 653 N.E.2d 661].

"Motion for Summary Judgment filed by Defendant Blaw Knox is hereby granted in part and denied in part. The motion is granted for the counts of Fraud and Misrepresentation, Strict Liability in Tort and Negligence. The Motion is denied as to the Contract Claims as there are material issues of fact. The Court relies on *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.* [(1989), 42 Ohio St.3d 40, 537 N.E.2d 624]."

On June 12, 1996, Ferro voluntarily dismissed the remaining claims pursuant to Civ.R. 41 and filed a timely notice of appeal and subsequent amended notice of appeal. This consolidated appeal follows. Appellant Ferro raises the following assignments of error for our review:

### ASSIGNMENT OF ERROR NO. I

"The trial court erred by granting summary judgment for blaw knox as to fraud because genuine issues of material fact exist."

### ASSIGNMENT OF ERROR NO. II

"The trial court erred by granting summary judgment for Blaw Knox as to fraud, negligent misrepresentation and negligent supervision by relying solely on *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Company* (1989), 42 Ohio St.3d 40, 537 N.E.2d 624, because *Chemtrol* is inapplicable to a cause of action for fraud, negligent misrepresentation and negligent supervision."

### ASSIGNMENT OF ERROR NO. III

"The trial court erred by granting summary judgment for ATF based solely on *Queen City Terminals, Inc. v. General American Transportation Corporation* (1995), 73 Ohio St.3d 609, 653 N.E.2d 661."

### ASSIGNMENT OF ERROR NO. IV

"The trial court erred by granting summary judgment for ATF because genuine issues of material fact exist."

Each of appellant's assigned errors challenges the lower court's grant of summary judgment in favor of the appellees. This court reviews the lower court's grant of summary judgment *de novo.* *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination."). An appellate court applies the same test as a trial court, which test is set forth in Civ.R. 56(C). Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, at 327, 4 O.O.3d 466, at 472, 364 N.E.2d 267, at 274.

Moreover, it is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, at 358–359, 604 N.E.2d 138, at 139–141.

In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc., Inc.* (1993), 90 Ohio App.3d 421, 629 N.E.2d 513. The nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Dresher v. Burt, supra; Celotex, supra,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 271. An appellate court reviewing a grant of summary judgment must follow the standards set forth in Civ.R. 56(C). " 'The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion.' " *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271, quoting *Saunders v.*

*McFaul* (1990), 71 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144. With these standards in mind, we address appellant's claimed errors.

It is uncontested in this appeal that appellant Ferro and appellee Blaw Knox acknowledge that the purchase and sale of the reactor was made pursuant to a contract between them; however, each of the assigned errors relates only to the tort claims as pled against both appellees Blaw Knox and ATF.

We address the appellant's second assigned error first. In its second assignment of error, appellant contends that the trial court erred in granting summary judgment to Blaw Knox as to the fraud, negligent misrepresentation and negligent supervision claims made against it. Specifically, appellant argues that *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co., supra,* is not applicable to its causes of action for fraud, negligent misrepresentation and negligent supervision.

The first question for our consideration is whether a commercial purchaser such as Ferro, which buys a product from a commercial seller such as Blaw Knox pursuant to a contract of sale, is limited to all recovery under contract law and is precluded from maintaining any action in tort by the holding in *Chemtrol.*

It is undisputed that a contract exists as to these parties. The decision in *Chemtrol* is grounded on the contractual relationship between the parties. *Chemtrol* held that a commercial buyer seeking recovery from a seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the uniform commercial code; however, in the absence of injury to persons or damage to other property, the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence. *Chemtrol,* 42 Ohio St.3d at 51, 537 N.E.2d at 635–636.

Therefore, we find that because Ferro may bring a contract action against Blaw Knox, it may not recover economic losses through a negligence action. It is the character of the loss, here the economic losses incurred as a result of the failure of the product, that determines that the cause of action lies in contract. *Chemtrol, supra;* see, also, *Bronze Bushing Co., Inc. v. North Am. Mfg. Co.* (Apr. 4, 1996), Cuyahoga App. No. 68852, unreported, 1996 WL 157337. We see no distinction in appellant's claim of negligence and negligent supervision in this setting. The trial court properly granted summary judgment in favor of Blaw Knox on Ferro's claims of negligence as pled in count four and of negligent supervision as pled in count five of the complaint.

However, pursuant to the holding of *Chemtrol,* it cannot be said that Ferro must be precluded from bringing its separate and distinct tort claims of

fraud and negligent misrepresentation against Blaw Knox. In these claims, appellant alleges both economic losses and property damage. Further, these claims are not limited to the allegation that the product itself was defective, but they go to the actions of appellee Blaw Knox in its negotiation of the contract. Accordingly, we find that appellant's second assigned error has merit as to the counts of fraud and negligent misrepresentation. It was error for the trial court to grant summary judgment in favor of Blaw Knox on these two counts in the complaint pursuant to the authority of *Chemtrol.*

As we have determined that Ferro is not precluded from bringing its claim for fraud against Blaw Knox by the holding of *Chemtrol,* we review appellant's first assigned error. Appellant contends that it was error for the trial court to grant summary judgment to Blaw Knox on its claim against it for fraud where genuine issues of material fact exist. We agree.

■ The elements of fraud are set forth in *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, at 55, 514 N.E.2d 709, at 712, as follows:

"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

■ Appellee Blaw Knox, with its motion for summary judgment, has presented its evidence intended to contradict the allegations of misrepresentations made in the complaint. A review of the complaint and the supporting documentation presented reveals that the allegations establish that the appellant has presented evidence that Blaw Knox made material representations that were false and were intended to mislead appellant, and it justifiably relied on these misrepresentations with the resulting injury proximately caused by this reliance. These representations included the statements that Blaw Knox and its employees were expert in the design, manufacture and fabrication of a reactor of this type; that Blaw Knox had the capability to manufacture and fabricate this reactor in-house and within the time frame; and that Blaw Knox had the expertise to supervise the manufacture and fabrication of this kind of reactor. Appellant has presented evidence that Blaw Knox intended that appellant rely upon the statements made. Appellant alleges that it relied upon the representations when it entered into the contract to purchase the reactor. Problems with the reactor occurred, and appellant alleges that the diminution of value of the reactor, the financial losses, attorney fees and the costs to investigate and repair the defect were the direct

and proximate result of the deliberate misrepresentations made by Blaw Knox and its concealment or omission of material facts during the negotiations regarding the purchase of the reactor.

Civ.R. 56(C) requires that the evidence be construed most strongly in favor of the appellant, against whom the motion for summary judgment was made. When viewing the evidence before us in a light most favorable to the nonmoving party, as we must do, we believe that reasonable minds could find that each of the elements of fraud have been proven by the appellant here. The motion must be overruled if reasonable minds could find for the party opposing the motion. *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 607 N.E.2d 1140. Accordingly, we find appellant's first assignment of error has merit. The trial court erred when it entered summary judgment in favor of appellee Blaw Knox on the fraud claim.

In its third assigned error, appellant contends that the trial court erred in granting summary judgment to ATF on count six (negligence), on count seven (strict liability in tort) and on count nine (breach of warranty of purpose). Specifically, appellant contends that the holding of *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 653 N.E.2d 661, is inapplicable to its actions against ATF and that the trial court's reliance on *Queen City* is therefore misplaced. Further, in Assignment of Error No. IV, appellant contends that it was error for the trial court to grant summary judgment where genuine issues of material fact exist. We agree.

First, we are asked to decide whether the trial court properly granted summary judgment in favor of ATF on count six of the appellant's complaint, in which appellant alleges negligence against ATF based upon the holding of *Queen City*, which provides:

"In order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage." *Id.* at syllabus.

 It is undisputed that ATF and Ferro are not in privity of contract. ATF premised its motion for summary judgment solely on its contention that all the damage claims of appellant consisted of purely economic loss. ATF concluded that appellant was therefore precluded from recovery pursuant to R.C. 2307.73 for its failure to show that it had suffered "death, physical injury to person, serious emotional distress, or physical damage to property other than the Reactor in question."

Appellant asserts that it does not seek recovery simply for economic loss but alleges that it has suffered "harm" as required under the Ohio Products Liability Act. Appellant argues that the liner was an "attachment" to the reactor, that the

damage occurred to the liner, such damage not being to the product itself but to property other than the reactor, and that the damage and repair costs claimed constituted damages that went beyond the economic loss. Consequently, appellant argues that it may bring its negligence claim against ATF. Further, appellant contends that its complaint included relief for property damage; that is, damage to business reputation caused by the loss of customer good will and the erosion of its reputation in the specialty chemical manufacturing marketplace. Such damages constitute "property damage." See *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 603 N.E.2d 969.

Despite the characterization by ATF of the damage claims of the appellant as purely economic, the appellant has made a claim for harm to the liner of the reactor, which is not the "product itself" but is alleged to be an "attachment" to the product. We conclude that an issue of fact exists concerning the characterization and status of the liner. Therefore, summary judgment granted on the appellant's negligence claim on the basis that appellant has incurred only "economic loss" is error.

 Next, appellant argues that *Queen City Terminals* does not control its strict liability claim. We agree. The court in *Queen City* held that "in order to recover indirect economic damages in a negligence action, the plaintiff must prove that the indirect economic damages arose from tangible physical injury to persons or from tangible property damage." *Queen City, supra,* at the syllabus. *Queen City* is, therefore, inapplicable to the appellant's strict liability claim made pursuant to Restatement of Torts 2d Section 402(a) in count seven of the complaint. Further, *Chemtrol* found that an action for strict liability seeking purely economic damages may be maintained if the parties lack privity of contract. *Chemtrol, supra,* 42 Ohio St.3d at 49, 537 N.E.2d at 633–634; see, also, *Shiffer Industries Inc. v. Lakewood Tool & Supply Co.* (June 10, 1993), Cuyahoga App. No. 62744, unreported, 1993 WL 204591. Therefore, we find that the trial court erred in granting summary judgment on count seven of the complaint, the claim of strict liability, on the basis that *Queen City Terminals* controls.

 Finally, appellant argues that it may maintain an action for breach of implied warranty as claimed in count nine of the complaint and that the trial court erred in granting summary judgment to ATF on this claim, as ATF failed to advance any argument on this claim in its motion for summary judgment or provide any evidentiary material in support. We agree. A careful review of ATF"s motion for summary judgment shows us that ATF moved for judgment on the strict liability and negligence counts addressed in the complaint. It is well settled that "a party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio

St.3d 112, 526 N.E.2d 798. Therefore, the trial court committed reversible error by granting summary judgment in favor of a party who had not moved for judgment. Civ.R. 56(C).

Accordingly, we find that in accordance with the holding of *Chemtrol*, the trial court properly granted summary judgment in favor of Blaw Knox on count four of the complaint, which alleged negligence, and on count five of the complaint, which alleged negligent supervision and affirm the ruling of the trial court.

We find, however, that the trial court erred in granting summary judgment on appellant's claims for fraud and negligent misrepresentation. We read the decision of the court in *Chemtrol* to preclude only strict liability and negligence actions where the parties have contract remedies and, therefore, reverse and remand to the trial court for trial on the fraud and negligent misrepresentation claims.

Finally, we find that the trial court erred in granting the motion for summary judgment in favor of ATF on each of the three counts pled in the complaint and, therefore, reverse and remand for trial on the issues.

The decision of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

KARPINSKI, P.J., and PATTON, J., concur.

JOSEPH E. MAHONEY, J., retired, of the Eleventh Appellate District, sitting by assignment.