DECISION
Plaintiffs-appellants Michael A. Tackett and Norm Chenoweth appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment for defendant-appellee Columbia Energy Group Service Corporation ("Columbia Energy").
Appellants were injured during the course of their employment with Carrier Corporation, a contractor that performed maintenance and repair on the premises of a Columbia Energy building in Columbus, Ohio. Appellants were injured while working on a "chiller," a large air conditioning unit that produces cool air in commercial buildings by heating a solution of lithium bromide and water. After several days of attempts to repair the chiller, with only intermittent success, Tackett, a service technician, and his supervisor, Chenoweth, a former technician, suffered burns when the lithium bromide solution overheated and discharged through a pressure release mechanism known as a "rupture disk" at an estimated temperature of over three hundred forty degrees. The discharge pipe from the pressure release mechanism terminated a short distance above the concrete floor, initially causing hot lithium bromide solution to splatter on appellants. In addition, the discharge pipe itself separated at its point of attachment from the rupture disk, causing more hot lithium bromide solution to spray onto appellants from above, causing further burns.
Appellants filed their complaint naming as appellees Columbia Energy and Columbia Gas of Ohio, Inc. Columbia Gas appears to have been a tenant occupying some portion of the premises. Columbia Gas is no longer a party to this action, having been dismissed without prejudice prior to the grant of summary judgment in the trial court. Appellants' complaint alleges negligence and negligence per se on the part of Columbia Energy for failure to properly install and maintain the equipment which led to appellants' injuries, and failure to comply with specific legislative enactments relating to the construction and maintenance of unfired pressure vessels such as the chiller in question. With respect to their negligence claim, appellants alleged that the chiller unit was defectively installed or maintained because the rupture disk discharge pipe did not, as specified in the installation manual, terminate in a floor drain but, rather, discharged directly on the concrete floor, allowing the hot lithium bromide solution to splash onto appellants. In addition, appellants alleged that the discharge pipe was made of PVC plastic rather than CPVC, the material specified in the manual, which has better performance at high temperatures. Appellants did not specify, with respect to their negligence per se claim, which specific statute Columbia Energy had failed to comply with.
Appellee then moved for summary judgment, which the trial court granted. The trial court concluded that there remained no material issue of fact on the question of whether the work performed by appellants was inherently dangerous, thus precluding liability on the part of appellee as the landowner. The trial court further found that appellants had not demonstrated negligence per se, because the statutes invoked by appellants in opposition to summary judgment did not give rise to such a liability. The trial court accordingly entered summary judgment in favor of appellee on all counts in appellants' complaint.
Appellants have timely appealed and bring the following assignment of error:
 The Trial Court erred to the prejudice of Plaintiffs-Appellants in finding that there were no genuine issues of material fact and granting summary judgment in favor of Defendant-Appellee, Columbia Energy Group Service Corporation.
Appellants essentially argue two distinct issues in support of their assignment of error. First, appellants argue that the trial court granted summary judgment based on negligence per se issues which were not raised and argued in appellee's motion, and upon which appellants consequently did not have an obligation to present evidence going to their burden of proof at trial. Second, appellants argue that the trial court improperly concluded that the issue of whether or not an activity undertaken by a contractor on a landowners property is inherently dangerous, thus shielding the landowner from liability, was a question of law for the court to resolve, rather than an issue of fact for the jury.
The present matter was decided on summary judgment. Civ.R. 56(C) states that summary judgment shall be granted if:
 * * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant before the trial court are found to support it, even if the trial court failed to consider those grounds. Dresher v. Burt (1996), 75 Ohio St.3d 280; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38.
The Ohio Supreme Court further elaborated on the moving party's burden when seeking summary judgment in Dresher, supra, at 293, in which the court stated:
 Accordingly, we hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. [Emphasis sic.]
The court in Dresher, therefore, returned to a former standard set forth in Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115, in which the court made it clear that the moving party bears the burden of specifically identifying the issues to be relied upon in a grant of summary judgment, in order to provide proper notice enabling the nonmoving party to formulate the appropriate response:
 * * * Rather than eliminate the non-moving party's burden, the requirement that the moving party, here appellee, be specific in his reasons for requesting summary judgment provides the non-moving party with the information needed to formulate an appropriate response as required by Civ.R. 56(E).
Accordingly, if a party files a motion based on some but not all issues in the case, the trial court should, under most circumstances, restrict its ruling to those matters raised and argued by the parties in the motion for summary judgment. Ferro Corp. v. Blaw Knox Food Chem. Equip. Co. (1997), 121 Ohio App.3d 434, 443.
We first address appellants' negligence claim against Columbia Energy, which falls under Ohio's "frequenter statute," R.C. 4101.11:
 Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.
The Ohio Supreme Court has stated that the duty created under the frequenter statute is "not * * * substantially different from that imposed at common law upon an owner of property." Westwood v. Thrifty Boy (1972), 29 Ohio St.2d 84, paragraph one of the syllabus. The statute "requires no more care than is owed by an owner of property to an invitee." Debie v. Cochran Pharmacy-Berwick, Inc. (1967),11 Ohio St.2d 38, 42. Because the frequenter statute therefore merely codifies the common law of negligence, we will examine appellants' claim under that standard.
In order to recover from Columbia Energy, appellants must establish that Columbia Energy owed Tackett and Chenoweth a duty, that Columbia Energy breached that duty, and that the breach of that duty was the proximate cause of injuries to appellants. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. The common law duty owed by a property owner to an individual depends on the status of the individual as an invitee, licensee, or trespasser on the property. Railroad Co. v. Harvey (1907), 77 Ohio St. 235, 240. It is uncontroverted in the present case that Tackett and Chenoweth, being on the premises by invitation of the property owner for a purpose beneficial to the owner, were business invitees. Generally, a landowner owes an invitee a duty of ordinary care, including a duty to maintain premises in a reasonably safe condition and to warn the invitee of latent or concealed defect of which the owner has or should have knowledge. Perry v. Eastgreen Realty Co. (1978), 53 Ohio St.2d 51, 52-53. A property owner must exercise ordinary care to maintain the premises in a reasonably safe condition so as not to expose invitees unreasonably to danger. The J.C. Penney Co., Inc. v. Robison (1934), 128 Ohio St. 626, paragraph one of the syllabus. While a property owner owes business invitees a higher duty of care than that owed any other class of individual, the property owner is not an insurer of an invitee's safety. Englehardt v. Phillipps (1939), 136 Ohio St. 73, 77.
Ohio recognizes, however, a significant exception, involving "inherently dangerous" work, to the general rule addressing the duty of a landowner to an invitee:
 * * * Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.
 * * * One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance.
Wellman v. The East Ohio Gas Co. (1953), 160 Ohio St. 103, paragraphs one and two of the syllabus. While some exceptions to the Wellman doctrine exist, most significantly that set forth in Hirschbach v. Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206, involving situations in which the landowner actively participates in, controls, or directs the work of the contractor, the parties agree that these exceptions do not apply on the facts of the present case.
The question of whether a duty exists which would give rise to liability for negligence is a question of law. Mussivand v. David (1989), 45 Ohio St.3d 314, 318. As an extension of this determination, Ohio court's have generally treated the issue of whether employment is inherently dangerous as a question of law to be determined by the court. Sopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628, 643; Best v. Energized Substation Serv., Inc. (1993), 88 Ohio App.3d 109. Recently, in the case of Frost v. Dayton Power Light Co. (2000),138 Ohio App.3d 182, Ohio's Fourth Appellate District aptly summarized the test to determine whether work is inherently dangerous for purposes of the Wellman exception to landowner liability:
 * * * [T]he performance of a task is inherently dangerous when the independent contractor recognizes or should recognize that a degree of danger surrounds the performance of the task for which he was engaged. In answering the foregoing question, courts should not limit the inquiry to the specific task being performed. Rather, courts also should consider the environment in which the task is performed. * * * [Id. at 198.]
In the present case, the trial court found that appellants were engaged in inherently dangerous work when they were injured. The court based its determination on the fact that appellants had received extensive specialized training on maintenance of the chiller unit, that the chiller unit itself involved a process utilizing liquids at high temperatures and pressures, and that appellants' work occasionally required them to wear protective equipment and clothing, which would be taken with them to the job site in the company truck.
We agree with the trial court's conclusion that, as a matter of law, working on the chiller units in question as they are described in the record must be found to be inherently dangerous. We are unpersuaded by appellants' argument, based upon statements in their deposition and affidavits, that they did not personally believe that working on a chiller unit was inherently dangerous, and that had the rupture disk discharge piping not been defective, they would have suffered no injury from the over pressurization and subsequent liquid release from the chiller. First, as we have set forth above, a determination of whether employment is inherently dangerous is a question of law to be addressed by the court; the court was not obligated to accept legally conclusory statements in appellants' affidavits as raising a material issue of fact on the question. Second, "inherently dangerous" is not synonymous with "inevitably catas-trophic." For every occupation or task classified as inherently dangerous, one would still find the vast majority of cases where the work was undertaken without mishap or injury; otherwise, there would be little likelihood of finding anyone to undertake work such as painting electrical substations, working on construction high-rise construction sites, or dismantling a furnace, all occupations which have been found by courts to be inherently dangerous. Sopkovich, supra; Bond v. Howard Corp. (1995), 72 Ohio St.3d 332; Adkins v. Armco Steel Co. (Apr. 15, 1996), Butler App. No. CA95-07-119, unreported. The question of whether an occupation is inherently dangerous is one of probabilities based upon the nature and circumstances of the work, and is not to be determined after the fact based upon the unfortunate outcome in a particular case.[1]
We therefore find that the trial court did not err as a matter of law in concluding that the work undertaken by appellants in maintaining and repairing the chiller unit on appellee's premises was inherently dangerous by its nature. The trial court therefore did not err in granting summary judgment for Columbia Energy on appellants' negligence claim.
We now turn to issues surrounding appellants' claim that appellee was negligent per se. Appellants' complaint generally alleged that Columbia Energy was negligent per se by "failing to comply with specific legislative enactments relating to the construction and/or maintenance of unfired pressure vessels." (Paragraph 4 of appell-ants' complaint.) Appellants did not set forth a specific statute in the complaint which they alleged gave rise to negligence per se on the part of Columbia Energy. In Columbia Energy's motion for summary judgment, it was accordingly pointed out that no specific statute had been relied upon for the negligence per se claim. Appellants' responded in their memo contra summary judgment that R.C. 4104.12, governing inspection requirements for certain boilers and pressure vessels, had not been complied with by Columbia Energy:
 All boilers, except boilers mentioned in section 4104.04
of the Revised Code, shall be inspected when installed and shall not be operated until an appropriate certificate of operation has been issued by the superintendent of the division of industrial compliance. The certificate of operation required by this section shall not be issued for any boiler which has not been thoroughly inspected during construction and upon completion, by either a general or special inspector, and which does not conform in every detail with the rules adopted by the board of building standards and unless, upon completion, such boiler is distinctly stamped under such rules by such inspector.
R.C. 4104.01 defines boilers for purposes of R.C. 4104.12:
 (C) "Boiler" means a closed vessel in which water is heated, steam is generated, steam is superheated, or any combination thereof, under pressure or vacuum for use externally to itself by the direct application of heat from the combustion of fuels, or from electricity or nuclear energy. "Boiler" includes fired units for heating or vaporizing liquids other than water where these units are separate from processing systems and are complete within themselves.
The Ohio Supreme Court has defined the law of negligence per se in Ohio as follows:
 * * * Where a legislative enactment imposes upon any person a specific duty for the protection of others, and his neglect to perform that duty proximately results in injury to such another, he is negligent per se or as a matter of law.
 * * * Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence pre se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case.
Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, paragraphs two and three of the syllabus.
Appellants did not offer any evidence in opposition to summary judgment indicating that the chiller unit in question fell within the definitions of R.C. 4104.01(C) and thus within the ambit of R.C. 4104.12. Appellant Tackett's affidavit avers that the chiller so falls within the definition of a boiler and is subject to the inspection requirements, but Tackett's affidavit does not make the necessary, complementary, averment that he is qualified to attest to the applicability of the inspection statute in question to the chiller. In fact, Tackett's deposition testimony is directly contradictory:
 Q. * * * Do you have any information to the effect that a permit or an inspection of the chiller unit is required, as far as you know?
A. I wouldn't know. [Tackett depo. at 68.]
In order to establish their claim of negligence per se, appellants bore the burden of establishing the applicability of a statute giving rise to a legal duty on the part of appellee. While the materials before the trial court did identify a statute, its applicability was never shown through competent evidence. Appellants likewise pre-sented no legal authority for the proposition that failure to undertake R.C. 4104.12
inspections of a chiller unit would constitute negligence per se. Based on the materials before the trial court, we conclude that the trial court did not err in finding that there remained no material issue of fact on the question of negligence per se, and in granting summary judgment for appellee.
Based upon the foregoing we find that the trial court did not err in granting summary judgment for appellee Columbia Energy on both appellants' negligence and negligence per se claim, and appellants' assignment of error is accordingly overruled. The judgment of the Franklin County Court of Common Pleas granting summary judgment for Columbia Energy is affirmed.
LAZARUS and KENNEDY, JJ., concur.
[1] We note that this leads us to reject appellee's equally untenable argument that, because the repair job on the chiller in the case before us did go awry leading to serious injuries for appellants, the task must, based upon this outcome, be found to be inherently dangerous.